**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| DAVID THARP, Board of Trustees Chairman, on behalf of INDIANA/KENTUCKY/OHIO REGIONAL COUNCIL OF CARPENTERS PENSION FUND,  DOUG ROBINSON, WILLIAM NIX, JOE COAR, and DOUGLAS J. McCARRON | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:12-cv-01870-TWP-DML ) |
| CATRON INTERIOR SYSTEMS, INC., | ) ) |
| Defendant. | ) |

**ENTRY FOLLOWING DAMAGES HEARING**

This matter is before the Court following a damages hearing on delinquent contributions due and owing the Plaintiffs.  The Plaintiffs in this case are: (1) David Tharp, Board of Trustees Chairman, and Douglas Robinson, Board of Trustees Secretary, on behalf of Indiana/Kentucky/ Ohio Regional Council of Carpenters Pension Fund (the "Pension Fund"); (2) David Tharp, Board of Trustees Chairman, on behalf of Indiana/Kentucky/Ohio Regional Council of Carpenters Defined Contribution Pension Trust Fund (the "Annuity Fund"); (3) David Tharp, Board of Trustees Co-Chairman, and William Nix, Board of Trustees Co-Chairman, on behalf of Indiana/Kentucky/Ohio Regional Council of Carpenters Welfare Fund (the "Welfare Fund"); (4) David Tharp, Board of Trustees Chairman, and Joe Coar, Board of Trustees Secretary, on behalf of Indiana Carpenters Apprenticeship Fund and Journeyman Upgrade Program ("JATC"); (5) Douglas J. McCarron, Board of Trustees Chairman, on behalf of United Brotherhood of Carpenters Apprenticeship Training Fund of North America ("UBCJA"); and (6) Indiana/ Kentucky/Ohio

Regional Council of Carpenters ("the Union").  The Pension Fund, Annuity Fund, Welfare Fund, JATC, and UBCJA, will be collectively referred to as the "Plaintiff Trust Funds."

The Plaintiff Trust Funds have brought this lawsuit against Defendant Catron Interior Systems, Inc. ("Catron"), alleging violations of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145.  The Union brings suit under 29 U.S.C. § 185.  The Plaintiff Trust Funds and the Union (collectively, "the Plaintiffs") initiated this litigation to compel Catron to allow the Plaintiffs' payroll auditor to examine all necessary books and records to complete a payroll audit for the period of January 1, 2011 through December 31, 2012.  The Complaint also sought payment for any delinquent contributions uncovered by the audit.

Following summary judgment motions from both parties, the Court ordered Catron to allow the Plaintiffs' auditor to examine all necessary books and records to complete an audit for 2011 and 2012.  The auditor completed her audit of Catron, and the Plaintiffs filed with the Court a status report on the auditor's findings.  Thereafter, Catron filed its response, disputing the findings and conclusions of the auditor.  On December 18, 2015, the parties appeared by counsel before the Court and presented evidence and argument in support of their positions on the alleged delinquent contributions and the results of the audit.  The Court now makes its findings of fact and conclusions of law concerning the Plaintiffs' claim for delinquent contributions.

## I.   FINDINGS OF FACT

Mike Catron ("Mr. Catron") formed Catron on January 15, 1991.  Catron is a Kentucky business that provides commercial interior finishes.  Mr. Catron is a long-time member of the Union and always has intended for Catron to employ Union members.

The Plaintiff Trust Funds were created pursuant and subject to ERISA to provide benefits for employees working under the Union's collective bargaining agreements.  Catron and the Union

have had a contractual relationship since 1991 (Filing No. 23-1 at 1). Approximately every three years from 1991 through 2006, Catron and the Union signed a memorandum of agreement to continue their contractual relationship. *Id.*

Under the term of these agreements, Catron agreed to adopt the latest collective bargaining agreement between the Union and the Construction Employers Association of Central Kentucky. *Id.* This also included adoption of the agreements of the Plaintiff Trust Funds (Hearing Exs. 1–3). The collective bargaining agreements required employers, such as Catron, to pay certain hourly wages to union employees and contribute certain amounts of fringe benefits to the Plaintiff Trust Funds (Hearing Exs. 2–3). Pursuant to its agreement with the Union, Catron has paid the scaled union wages and has funded the Plaintiff Trust Funds since 1991 (Filing No. 23-1 at 1). Without executing additional written contracts with the Union after 2006, Catron continued to pay scaled union wages to each of its union employees after 2006. *Id.* Catron also continued to make contributions to the Plaintiff Trust Funds. In the midst of this litigation, in September 2013, Catron agreed that the June 1, 2012 collective bargaining agreement still controlled the parties' business relationship. *Id.* The June 1, 2012 collective bargaining agreement expired on May 31, 2015 (Hearing Ex. 3).

Like most of the country, beginning in 2008, Catron experienced financial difficulties because of the nationwide economic downturn. Catron had to layoff many of its employees. Catron looked for ways to cut expenses while still employing its remaining employees. At the end of 2010, Mr. Catron called Jerry Yates ("Mr. Yates"), the business agent for the Union, to ask how many hours of Union work needed to be reported to the Union in order for his employees to maintain their benefits, including health insurance. Mr. Yates explained that two weeks of Union work would be required to maintain benefits. Catron then began assigning its employees to Union

jobs as well as non-Union jobs (to pay the lower non-Union wages). Union work was performed for two weeks, and Catron paid two weeks of benefit contributions to the Plaintiff Trust Funds each month. In May 2011, Catron was informed that three weeks of benefit contributions were required in order for its employees to maintain Union benefits. Catron immediately began paying three weeks of benefit contributions.

As another way to weather the financial difficulties, in February 2011, Catron entered into a series of market recovery fund grant agreements with the Union (Hearing Ex. 8). These contracts consisted of promises from the Union to pay Catron for using Union employees. It was a way to help Catron compete with other companies, which did not use Union employees when bidding for jobs. These grants were signed by both Mr. Catron and Rick Fouts ("Mr. Fouts"), the Union representative. The total of all the grants promised to be paid to Catron for employing Union employees amounted to $95,367.50.[1] Catron never received any of this grant money from the Union.

On October 2, 2012, the Plaintiff Trust Funds selected Catron for an audit pursuant to its payroll audit policy. Michelle Zimmerman, a CPA, notified Catron by letter and requested it provide records in preparation for the audit (Filing No. 23-6). On October 4, 2012, Jerry Yates, the business agent for the Union, sent a letter to Catron explaining that several Catron carpenters had lost wages and fringe benefits. This second letter also requested an audit (Filing No. 23-7). However, Catron did not receive either letter (Filing No. 23-1 at 2). Because Catron did not receive the letters and therefore did not respond to the letters, the Plaintiffs filed this lawsuit on December 21, 2012, seeking an audit and payment of delinquent contributions.

---

[1] The market recovery fund grants were admitted into evidence during the damages hearing. Catron submitted the grants, totaling $97,767.50. However, the last market recovery fund grant for $2,400.00 was a duplicate of the first market recovery fund grant. Therefore, the correct total of all the market recovery fund grants is $95,367.50 (Hearing Ex. 8).

On February 1, 2013, Plaintiffs' counsel contacted Catron via telephone and requested an audit. Counsel also notified Catron of the lawsuit (Filing No. 23-8). During this telephone call, Catron agreed to permit an audit of the company's payroll accounts. Later on February 1, 2013, Plaintiffs' counsel emailed Catron, informing it that no further action would be taken on the lawsuit if Catron made arrangements for the audit. *Id.* Arrangements for the audit were promptly made (Filing No. 23-9).

Plaintiffs' payroll auditor, Joan Forthofer ("Ms. Forthofer"), went to the Catron facility on February 27, 2013, to audit Catron's records (Filing No. 29-3). Catron provided all requested documentation, including W-2s for all Catron employees and 1099s for payments made to non-employees. Catron also provided handwritten notes related to payments that Catron made to a truck driver and to a delivery driver. During the damages hearing, Ms. Forthofer testified that the handwritten notes were not satisfactory because she needed the "source documents" corresponding to the handwritten notes. However, there were no other "source documents," as Mr. Catron kept many business records by handwritten notes.

On March 27, 2013, Ms. Forthofer sent an email to Catron explaining several conclusions from her audit. At the close of her email, Ms. Forthofer stated, "[i]f you believe any of the classifications are in error, please respond within ten days and provide supporting documentation." (Filing No. 29-3 at 4.) The email requested a response and documentation only if Catron found errors in Ms. Forthofer's classifications. Catron did not receive requests for additional documentation or an additional audit. Despite Catron's cooperation with the audit, the Plaintiffs served Catron with the Summons and Complaint on April 8, 2013. The Complaint alleged that "Catron has failed to permit Plaintiffs Trust Funds' designated field auditor to review Catron's payroll books and related records." (Filing No. 1 at 4.) The Complaint also requested payment of

any delinquent contributions discovered in the audit.

On October 3, 2013, Catron deposed Ms. Forthofer (Filing No. 23-10).  During her deposition, Ms. Forthofer stated that the audit was not complete because she did not receive "source documents" corresponding to the handwritten notes that were provided during the audit. This was the first time that Catron was informed that more information was needed to complete the audit.  However, because of Mr. Catron's record keeping practices of making handwritten records, Catron did not have any additional accounting documents to produce.  Catron had supplied all of its handwritten notes, W-2s, and 1099s.

Following summary judgment motions from both parties, the Court ordered Catron to allow Ms. Forthofer to again examine all books and records to complete the audit for 2011 and 2012. Ms. Forthofer went to the Catron facility a second time on January 27, 2015.  Catron provided the same accounting records and documentation that had been provided during the audit in February 2013.  Catron did not provide any additional records because Catron had provided every accounting document in its possession during the audit in February 2013.

On April 8, 2015, the Plaintiffs sent a letter to Catron summarizing the audit findings and asserting that Catron owed $120,972.37 in delinquent contributions, dues, deductions, liquidated damages, and interest.  The Plaintiffs also provided the underlying reports from the audit (Hearing Ex. 4).  On May 7, 2015, the Plaintiffs filed a status report with the results of the audit.  On May 11, 2015, Catron filed a response disputing the audit results.  Catron did not dispute the dollar amounts, figures, calculations, and totals.  Rather, Catron disputed whether non-Union jobs performed by Union workers should be included in the audit.  It disputed that any contributions were owed.  The Court then ordered a hearing on damages, which was held on December 18, 2015.

The testimony given and exhibits admitted during the damages hearing show that (1)

Catron is owed $95,367.50 by virtue of the market recovery fund grants executed on February 28, 2011; (2) the Union is owed $10,710.45 in delinquent dues, contributions, deductions, interest, and liquidated damages from June 1, 2010 to May 31, 2012; and (3) the Plaintiff Trust Funds are owed $110,261.92 in delinquent contributions, interest, liquidated damages, and auditor fees (Hearing Exs. 4, 5, 8). The Court permitted a post-hearing submission to account for the auditor fees that were incurred after the April 8, 2015 report. The Plaintiffs submitted a supplemental report on the auditor fees, noting that the total fee incurred with respect to this matter is $6,863.75 (Filing No. 71-1). The amount of $5,785.00 in auditor fees was accounted for in the $110,261.92 noted above and in the April 8, 2015 letter to Catron. Therefore, the additional auditor fees amount to $1,078.75.

## II.   CONCLUSIONS OF LAW

Pursuant to the terms of the agreement between Catron and the Union, Catron had the contractual and statutory obligation to pay contributions and deductions to the Plaintiffs. While the last written agreement between the Union and Catron was executed in 2006 and the prior practice of the parties was to execute a new agreement every three years, there was no expiration or termination date for the 2006 agreement. Instead, the parties' agreement acknowledged an expiration of the adopted collective bargaining agreements: "Either Party desiring to amend or terminate the Collective Bargaining Agreements adopted in this Memorandum of Agreement must notify the other in writing at least sixty (60) days and not more than ninety (90) days prior to the expiration of the then current Collective Bargaining Agreement." (Hearing Ex. 1.) The agreement also stated the "parties do hereby adopt the latest collective bargaining agreement . . . and agree to be bound by all the terms and conditions thereof for the duration of such Collective Bargaining Agreements and any future Agreements." *Id.*

Despite not executing another written agreement in 2009 in accord with prior practice, the parties continued operating in the same manner as they had throughout the prior years of their business dealings.  Catron continued employing Union employees and paying Union wages and contributions.  Furthermore, during the course of this litigation, in September 2013, Catron agreed that the June 1, 2012 collective bargaining agreement still controlled the parties' business relationship (Filing No. 23-1 at 1).  The June 1, 2012 collective bargaining agreement expired on May 31, 2015 (Hearing Ex. 3).  Therefore, the Court concludes that Catron was contractually obligated under the 2006 agreement and the 2012 collective bargaining agreement to pay contributions and deductions to the Plaintiffs during the period raised in the Complaint and reviewed during the audit—January 1, 2011 through December 31, 2012.

Catron acknowledges that it failed to pay a full month of contributions and deductions during 2011 and 2012.  Catron justifies its conduct by explaining that its employees were working on non-Union jobs for two weeks and Union jobs for two weeks each month.  Catron paid Union wages and paid contributions based on those two weeks of work on Union jobs.  Therefore, Catron concludes, it paid all the Union contributions that were due because it paid two weeks of contributions based on the two weeks of work on Union jobs.

However, the agreement between the Union and Catron and the adopted collective bargaining agreements governing the parties' business relationship did not distinguish between Union and non-Union jobs performed by Union employees.  Rather, the provisions of the collective bargaining agreements were drafted in terms of "all employees" covered by the agreements.  Therefore, Catron's argument—Union employees' performance of work on non-Union jobs justified Catron in paying less contributions and deductions—is unavailing.

The Plaintiffs brought this action against Catron under sections of ERISA, 29 U.S.C. §§

1132 and 1145, and also under the Labor Management Relations Act, 29 U.S.C. § 185, for the

delinquent contributions. Catron's failure to pay the contractually required contributions violated

Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145. ERISA provisions provide parties

seeking recovery for delinquent contributions specific recovery:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>> (A) the unpaid contributions,
>> (B) interest on the unpaid contributions,
>> (C) an amount equal to the greater of—
>>> (i) interest on the unpaid contributions, or
>>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. §1132(g)(2).

The Plaintiffs submitted evidence showing that Catron's liability for delinquent

contributions, interest, liquidated damages, and auditor fees totaled $110,261.92. The additional

auditor fees incurred after the April 8, 2015 report amounted to $1,078.75. Not only did Catron

fail to designate any evidence to dispute this amount, but it also failed to even argue that such an

amount is inaccurate. Catron simply argued that it owed no contributions based on its Union

employees performing non-Union work. Therefore, the Court concludes that Catron is liable in

the amount of $111,340.67 for delinquent contributions, interest, liquidated damages, and auditor

fees for the period of January 1, 2011 through December 31, 2012.

Additionally, the Plaintiffs submitted evidence showing that Catron owed $10,710.45 in

delinquent Union dues, contributions, deductions, interest, and liquidated damages from June 1,

2010 to May 31, 2012. Again, Catron did not designate any evidence to dispute this amount and

did not argue that such an amount is inaccurate. Catron simply argued that it owed no contributions based on its Union employees performing non-Union work. However, the audit of Catron and the Complaint governing this litigation concern the period of January 1, 2011 through December 31, 2012. Thus, the delinquent dues, contributions, and deductions for the period of June 1, 2010 to December 31, 2010 fall outside the scope of this litigation. Therefore, the Court reduces the $10,710.45 owed to $6,399.48[2] to account for the seven months that are outside the scope of this litigation.

Finally, the Court considers the market recovery fund grants that the Union and Catron entered into on February 28, 2011. The Plaintiffs argue that these market recovery fund grants are not irrelevant in this case, and the market recovery fund grant agreements were not asserted in the parties' pleadings. However, the collective bargaining agreements governing the business relationship between the Union and Catron required Catron to pay deductions for market recovery. Additionally, the Plaintiffs offered Exhibits 5 and 6 during the damages hearing, which show that Catron was required to make payments for market recovery and that the Plaintiffs included unpaid deductions for market recovery in their damages calculation. Exhibit 8 from the damages hearing establishes the amount owed to Catron is $95,367.50 under the market recovery fund grants. The evidence also establishes that Catron was never paid this money. The Plaintiffs did not designate any evidence to dispute this amount and did not argue that such an amount is inaccurate. Rather, the Plaintiffs simply argued that the market recovery fund grants were not relevant. The Court concludes that Catron is owed $95,367.50 under the market recovery fund grants and will offset the damages award against Catron by this amount.

---

[2] The Court arrived at this number by reducing the June 1, 2010 to May 31, 2011 contribution period total, $6,158.53, by 58.3% (7/12) to equal $2,566.05 to account for the seven extra months in the calculation and then adjusting the interest and liquidated damages calculations ($2,566.05 + $2,766.85 = $5,332.90 + $533.29 interest + $533.29 liquidated damages = $6,399.48) (see Hearing Ex. 5).

### III.   CONCLUSION

Catron is liable to the Plaintiffs for delinquent Union dues, contributions, deductions, interest, and liquidated damages in the amount of $6,399.48 and for delinquent contributions, interest, liquidated damages, and auditor fees in the amount of $111,340.67 for the period of January 1, 2011 through December 31, 2012, totaling $117,740.15.  This amount of liability is offset by the amount owed to Catron under the market recovery fund grants, totaling $95,367.50. Therefore, **Catron's total liability to the Plaintiffs** for the period of January 1, 2011 through December 31, 2012 is **$22,372.65**.  Pursuant to 29 U.S.C. §1132(g)(2), the Plaintiffs also are entitled to their reasonable attorney's fees and costs of this action.  If these fees and costs are sought, the Plaintiffs must file an accounting of the fees and costs within **fourteen (14) days** of the date of this Order.  Final judgment will issue under separate order.

### SO ORDERED.

Date: 3/2/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

William Aaron Kemper
COLEMAN ROLES & ASSOCIATES PLLC
kemper.aaron@gmail.com

Alan W. Roles
COLEMAN ROLES & ASSOCIATES PLLC
alanwroles@yahoo.com

Suzanne C. Dyer
PAUL T. BERKOWITZ & ASSOCIATES, LTD.
suzanne@ptblaw.com

Thomas Edward Moss
PAUL T. BERKOWITZ & ASSOCIATES, LTD.
tom@ptblaw.com

Paul T. Berkowitz
PAUL T. BERKOWITZ & ASSOCIATES, LTD.
paul@ptblaw.com